THE STATE OF IOWA, Appellee, v. J. W. BROWN, Appellant.

1. **Seduction:** EVIDENCE: STATEMENT OF CONCLUSIONS. In a prosecution for seduction, testimony of the prosecutrix that the accused treated her "very affectionately" is incompetent as being the statement of a conclusion; but her statement that he commenced "keeping company" with her upon a date named is not objectionable upon such ground.

2. ———: ———: UNDERSTANDING AND INFERENCES OF WITNESS. In such a prosecution the question, whether the accused, in conversation with a witness in respect to taking improper liberties with the prosecutrix, did not say, "he was going to get there," is leading, and an answer to such question that such was the "understanding of the witness, or that he inferred" such fact from the language of the accused, is incompetent and immaterial.

3. ———: ———: PROOF OF ENGAGEMENT OF ACCUSED TO MARRY ANOTHER THAN PROSECUTRIX. It being claimed that the alleged seduction was accomplished under promise of marriage, *held*, that testimony of the accused that at the time the seduction of the prosecutrix was alleged to have been accomplished he was engaged to another, and had so informed the prosecutrix, was erroneously excluded.

4. ———: ———: PROOF OF ATTENTIONS PAID BY OTHERS THAN ACCUSED. That about the time of the alleged seduction the prosecutrix received attentions from others, similar to those paid by the accused, and that they had opportunity for sexual intercourse with her, may properly be shown where the evidence in corroboration of the prosecutrix in such cases is that the accused visited the woman as a suitor, and that they conducted themselves after the manner of lovers.

5. ———: ———: PRESUMPTION AS TO CHASTITY OF PROSECUTRIX. The burden is upon the accused in such case to overcome the presumption as to the previous chaste character of the prosecutrix by a preponderance of the evidence.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY, OCTOBER 6, 1892.

THE defendant was convicted of the crime of seduction, and adjudged to be imprisoned in the penitentiary for the term of fourteen months. He appeals. *Reversed.*

*Frank Shinn* and *Turner, Smith & Cullison*, for appellant.

*John Y. Stone*, Attorney General, and *Thomas A. Cheshire*, for the State.

ROBINSON, C. J.—The defendant is accused of having seduced Miss Flora Robley, on or about the

fifteenth day of September, 1888.    Evidence was sub-
mitted, on the part of the state, which tended to show
that the defendant visited Miss Robley as a suitor dur-
ing several months, both before and after the date
specified.    She testified, in substance and effect, that
she was seduced under the promise of marriage; that
a child, of which the defendant is the father, was
begotten on the first day of February, 1889, and born
on the twenty-third day of the following October.    The
defendant admits having visited the prosecutrix, but
denies the alleged promise of marriage and sexual
intercourse.

I. Miss Robley was permitted to testify, against
the objections of the defendant, that he commenced

1. SEDUCTION:   "keeping company" with her the first of
evidence:
statement of   July, 1888, and that he treated her "very
conclusions.   affectionately."    The phrase "keeping
company" is so commonly used, and so generally
understood, that we think there was no error in per-
mitting the witness to use it.    It has a definite signifi-
cation, as applied to the relations of unmarried people,
and the answer which contained it was not open to the
objection that it gave the conclusion of the witness as
to the fact.    If the witness used the phrase in any
other than the ordinary sense, that could have been
fully shown on cross-examination.    But we think the
court erred in permitting the witness to state that
defendant treated her "very affectionately."    The
answer was in the nature of a conclusion of the witness.
The facts upon which it was based should have been
stated, and the jury permitted to determine their effect.

II. A witness, who testified to having had a con-
versation with the defendant, stated that "he never

2. ——: ——: un-   said he intended to do any particular thing
derstanding
and inferences   with Flora Robley, and he never said
of witness.      that he intended to have sexual inter-
course with her."    He was then asked the following:

"Didn't the defendant say, in conversation with you, in speaking of taking improper liberties with this girl, that he was 'going to get there?'" This was objected to as incompetent, immaterial, and leading; but the objection was overruled, and the witness was permitted to answer: "That was the understanding that I took from it." No exception to the ruling was taken, but the witness was asked. "Didn't he say that, in substance?" That question was objected to on the same ground as the former one, but, without any ruling on the objection, the witness was permitted to answer: "That is what I understood. That is the understanding I inferred from it." A motion to strike the answer was sustained as to the latter part only, and an exception to the ruling was taken. The questions were leading, the answers were clearly incompetent and immaterial, and the last one was not responsive to the question. The understanding of the witness may not have been justified by the language used by the defendant, and in no view of the case was it properly received in evidence. The objections to the questions should have been sustained. Had the motion to strike not been made, the defendant would not have been in a position to complain because he failed to except to the ruling on the first objection, and there was no ruling on the second; but the motion showed that he did not waive his objections and his exceptions to the ruling on the motion, preserved his right to insist that the court erred in receiving the answer, and permitting it to stand. The motion should have been sustained as to the entire answer.

III. The defendant claims that he was engaged to be married to a Miss Preston, in the months of July, August and September, 1888, and that he told Miss Robley of that engagement about the first of July of the year named. He testified as a witness, and was asked

3. ——: ——: proof of engagement of accused to marry another than prosecutrix.

questions which were designed to draw out the-
facts in regard to his engagement to Miss Preston,
and Miss Robley's knowledge of it; but objections
to such questions were sustained. We think the
answers should have, been received. It was impor-.
tant for the jury to know the exact relation which
existed between the prosecutrix and the defendant at
the time of the alleged seduction. It is true that, if
the facts in regard to the- alleged engagment to Miss
Preston and Miss Robley's knowledge of it were as
claimed by the defendant, he might nevertheless be
guilty of the crime of which he is accused; yet the
prosecutrix claims that the alleged seduction was
accomplished by means of a promise of marriage, and.
the defendant was entitled to have the jury informed
as to what knowledge she had of the relation, if any,
which existed between the defendant and Miss Preston
at the time the seduction is alleged to have been accom-
plished. A chaste woman would be less likely to sur-
render her virtue at the solicitation of a man she knew
to be engaged to marry another, even though he also
promised to marry her, than she would to a person
engaged to no one but herself. That a chaste woman
may be seduced by a person she knows to be under
promise of marriage to another is no doubt true, but
the jury should know the fact in order that they may
weigh the influences which operated upon her, and thus
reach an intelligent conclusion.

IV. The defendant claims that one Henry Schoffe;
visited Miss Robley as a suitor from the first of July,.
1888, until the first of May, 1889, and he-
offered evidence for the purpose of show-.
ing that such was the fact, but it. was.
refused. We are of the opinion that it.

4. ——: ——:
proof of at-
tentions paid
by others than
accused.

should have been received. Section 4560 of the Code-
provides that a person shall not be convicted of the.
crime of seduction upon the testimony of the woman,.

"unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense." It is well settled that the corroboration need not extend to all the essential elements of the offense, and that proof that the accused visited the woman as a suitor, and that they conducted themselves as lovers usually do, may be sufficient. See *State v. Smith*, 84 Iowa, 522, and cases therein cited. The corroboration in this case was largely evidence that the defendant visited the prosecutrix at her home, accompanied her to church, and otherwise conducted himself as her suitor. But the effect of such evidence might well have been lessened, if not wholly destroyed, by showing that during the time the defendant was so visiting her she was accepting similar attentions from another, who had opportunities for sexual intercourse with her.

V. The court instructed the jury as follows: "* * * You should, in the first instance, assume that the prosecuting witness was of chaste character at said time, and this presumption must continue, unless the contrary is shown by a preponderance of the evidence. * * *" The defendant objects to that portion of the charge on the ground that it required him to overcome the presumption that the prosecutrix was of chaste character, previous to the alleged seduction, by a preponderance of the evidence, and insists that it should be sufficient if the evidence created a reasonable doubt as to whether her character was chaste before that time. The question thus presented is not an open one in this state. It was considered in the recent case of *State v. Hemm*, 82 Iowa, 609, and the rule of the instructions under consideration was approved. See, also, *State v. Wells*, 48 Iowa, 673.

VI. It is urged in behalf of the state that some of the errors which we have pointed out are without prejudice, and that none of them are of sufficient import-

ance to justify a reversal of the judgment of the district court. Some of them, it is true, are of little importance, when considered with other portions of the record; but some are more serious, and of a prejudicial nature. A careful examination of the entire record leads us to the conclusion that the defendant has not had that fair trial, free from prejudicial error, to which he is entitled.

The judgment of the district court is REVERSED.