**STATE of Iowa, Appellee,**

v.

**Thomas Earl SEEHAN, Appellant.**

**No. 59749.**

Supreme Court of Iowa.

Oct. 19, 1977.

James A. Brewer and Jerry L. Jones, Ames, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle IV, Asst. Atty. Gen., Ruth R. Harkin, County Atty., and Richard O. Parker, Asst. County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant was convicted of first-degree murder in the suffocation death of his two-year-old son in violation of § 690.2, The Code. He was thereupon sentenced to life imprisonment and thereafter brought this appeal in which he raises five assignments of error. We affirm the trial court.

Thomas Earl Seehan (defendant) and his wife Linda Seehan were married in January 1972 and were the parents of one son, Thomas Earl Seehan, Jr. The State offered evidence to prove Thomas Earl Seehan, Jr., who was two years old at the time, died as a result of suffocation at the hands of defendant on December 3, 1975. Defendant's apparent motive for the killing stemmed from the breakdown of his marriage. Defendant indicated his determination that no one other than he would have custody of the two-year-old son.

The following day defendant went to the place of employment of his wife and held her hostage for a number of hours before surrendering to authorities.

I. Defendant's first assignment challenges a pretrial ruling in which the trial court required defendant to submit to a mental examination. Following his arrest defendant moved the court to order transportation to the state psychopathic hospital in Iowa City and for a mental examination by Dr. Ralph Maurer. In granting defendant's motion the trial court ruled in part:

"In the event the defendant, at or during the trial, by pleading or evidence, raises any psychiatric issues, such as insanity or diminished responsibility, the State will be entitled to a psychiatric evaluation of the defendant and such continuance as may be reasonably necessary to accomplish it. If the defendant refuses to co-operate with the state psychiatrist, defendant's psychiatric evidence may be excluded or the jury could be instructed to disregard [it] if the same has already gone into evidence."

Thereafter defendant filed his notice of intention to raise the question of insanity as a defense. Upon receiving this notice the State applied to have defendant examined by a state psychiatrist at the Iowa security medical facility at Oakdale. Defendant objected to examination by the State and, over defendant's resistance, the State's application was granted. Defendant was examined pursuant to the court order and the examining psychiatrist testified for the State at trial. Defendant at no time consented to the examination.

■ Section 223.4, The Code, is the only section in the Code which mentions the admission of patients to the facility. The section seems to presuppose, but does not specify nor directly authorize, an involuntary psychiatric examination of a criminal defendant. However we believe the trial court possessed the inherent power to order such an examination. We believe the trial court acted properly in ordering the examination in this case.

Although both parties cite our opinion in *State v. Collins*, 236 N.W.2d 376 (Iowa 1975) for their respective positions *Collins* did not reach the question presented. This is a case of first impression.

However the federal courts have considered the question. The case of *Pope v. United States*, 372 F.2d 710, 720–721 (8 Cir. 1967); *vacated on other grounds* 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968) clearly, and we think rightly, recognizes a court's inherent power to order state-initiated mental examinations. We believe the rationale in *Pope* is sound:

" * * . * Whether one frames his approach in terms of waiver or of fundamental fairness buttressed with appropriate protective instructions, (authority), we fail to perceive any constitutional violation or prejudicial error in what the trial court did here. Certainly, the criminal trial is still a search for truth subject, of course, to constitutional guaranties. It would be a strange situation, indeed, if, first, the government is to be compelled to afford the defense ample psychiatric service and evidence at government expense and, second,

if the government is to have the burden of proof, as it does with the competency issue in the case, (authority), and yet is to be denied the opportunity to have its own corresponding and verifying examination, a step which perhaps is the most trustworthy means of attempting to meet that burden. Yet that is precisely what the defense claims is appropriate here.

" * * *

"We therefore specifically hold that by raising the issue of insanity, by submitting to psychiatric and psychologic examination by his own examiners, and by presenting evidence as to mental incompetency from the lips of the defendant and those examiners, the defense raised that issue for all purposes and that the government was appropriately granted leave to have the defendant examined by experts of its choice and to present their opinions in evidence. * * *." 372 F.2d at 720–721. See also *Alexander v. United States*, 380 F.2d 33, 39 (8 Cir. 1967); *United States v. Reifsteck*, 535 F.2d 1030, 1033 (8 Cir. 1976); *United States v. Jines*, 536 F.2d 1255, 1256 (8 Cir. 1976).

Defendant relies on a Minnesota Supreme Court opinion, *State v. Olson*, 274 Minn. 225, 143 N.W.2d 69 (1966). We are not persuaded by the rationale in *Olson* but subscribe to the analysis of that case in *United States v. Albright*, 388 F.2d 719, 723 (4 Cir. 1968):

" * * * We find the *Olson* case unpersuasive, because, * * * the problem of potential self-incrimination is not of such magnitude as to be insurmountable, and there are even weightier reasons why expert medical opinion should be sought when the mental condition of a defendant is brought into issue. Sanity, as defined by law, under many authorities can be determined by lay opinion. But with the advance of medical science in general, and the study and knowledge of mental illness in particular, we would unduly limit the ability of a court to find the truth in a criminal case where sanity is an issue were we to turn our backs on the tool of expert medical

knowledge. Rather, the use of expert medical opinion is to be encouraged. (Authorities). We hold, therefore, that the district court had ample authority to order defendant to submit to a psychiatric examination."

■ Requirement of such an examination is not inconsistent with the ABA Standards for Criminal Justice, Discovery and Procedure Before Trial, 7–2.1(a)(ix): "Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused to: * * * submit to a reasonable physical or medical inspection of his body." Psychiatry is a branch of medical science. Webster's New International Dictionary, Third Ed. (1964). See *Wallach v. Monarch Life Ins. Co.*, 58 Misc.2d 202, 204, 295 N.Y.S.2d 109, 111 (1968). We believe a medical inspection of defendant's body includes a psychiatric examination under the circumstances of this case.

■ The trial court did not err in granting the State's application to require defendant to submit to a psychiatric examination or in receiving the results of that examination at trial.

II. Three of defendant's assignments of error relate to the admissibility of evidence. Defendant first claims the trial court erred in admitting colored photographs depicting the victim's body. He argues the two pictures admitted were without probative value and had no other purpose than to inflame the passions of the jury.

■ We believe the probative value of the photographs substantially outweighs any danger of unfair prejudice. Under § 777.17, The Code, defendant's plea of not guilty denied and placed in issue every material allegation in the county attorney's information. As pointed out in *State v. Nowlin*, 244 N.W.2d 596, 600–601 (Iowa 1976), the trial court's problem is to balance the probative value of the evidence against possible prejudice. It is a matter for the exercise of trial court's discretion. We reverse only for an abuse of discretion. Evidence of this nature tends to be gruesome

because murder is gruesome. That alone is not a sufficient reason to exclude it. *State v. Lass*, 228 N.W.2d 758, 771 (Iowa 1975). The trial court did not abuse its discretion. Defendant's challenge to the admission of the photographs is without merit.

III. Two of defendant's assignments challenge trial court rulings on objections to testimony of Jerry Skahill, an Iowa highway patrolman. Skahill was acquainted with defendant before the homicide and visited with him during the period of time defendant held his wife hostage. The officer went into the building and talked with defendant six to eight times. He was with defendant a total of approximately three hours during that day.

During Skahill's testimony in chief he testified defendant asked him if people on the outside thought he was crazy and if they thought he was going to shoot his wife. Defendant stated to Skahill he had no intention of killing her, that "it would hurt her worse to live with it." Skahill's testimony continues:

"Q. [By Mrs. Harkin, the prosecutor] When he said to live with it, what did you take that to mean? A. I assumed he meant—

"MR. BREWER [Defense counsel]: I am going to object to asking this witness to give an impression of the mental processes of another.

"THE COURT: Sustained.

"Q. What did that—Excuse me. What did that statement mean to you, Mr. Skahill?

"MR. BREWER: I am going to object. That's irrelevant and immaterial. No proper foundation being laid that this person is qualified to make such an opinion.

"THE COURT: Overruled.

"A. I assumed it to mean that the death of his son.

"Q. That that would be more painful to her than—A. That's correct."

■ A witness's impressions of the intended meaning of the out-of-court remarks of another are generally inadmissible. The

view excluding such testimony is commonly thought to be an adjunct of the opinion rule. 7 Wigmore on Evidence, § 1969, pp. 109–110 (Third Ed. 1970). We once indicated such statements were incompetent and immaterial. *State v. Brown*, 86 Iowa 121, 124, 53 N.W. 92, 93 (1892).

■ We believe the objection should have been sustained. But we are unwilling to hold the case should be reversed on the basis of this ruling alone.

■ For at least two reasons we are persuaded the error was not prejudicial. In the first place the subject of the question was wholly outside the offense with which defendant was charged, having nothing to do with the crime itself. The general subject of the witness's testimony at the time (whether defendant intended to kill his wife) was not objected to. An objection was not interposed until the question called for the witness's interpretation of defendant's remark. Though the ruling was erroneous the question was on a matter distantly remote from any disputed issue in the case. The trial did not involve what the witness believed defendant meant in his explanation of why he would not kill his wife. Though this makes the subject of the question less relevant it tends to reduce the prejudice resulting from its admission.

We think the answer was not prejudicial for a second reason. The witness's interpretation of defendant's remark seems elementary and obvious. We seriously doubt any of the jurors could interpret defendant's remark any differently than the witness did. It seems highly unlikely any juror's understanding of defendant's remark was altered or in any way affected by the witness's explanation of the remark. We conclude the trial court's error in overruling the objection was without prejudice.

IV. When Officer Skahill was cross-examined by defendant he was asked what, on the basis of his conversations, questioning, or his investigation, was his opinion as to why defendant killed his son. The State objected to the question on the ground the witness was not qualified to answer it and on the ground it went beyond the scope of direct examination. On appeal defendant challenges the overruling of this objection.

The State seeks to support the ruling on the basis its admission was within the trial court's discretion. See *State v. Milliken*, 204 N.W.2d 594, 597 (Iowa 1973): " * * * The admission of opinion evidence, including that related to non-expert state of mind, rests largely in the sound discretion of trial court. (Authorities)."

■ However we think the trial court was bound to sustain, as it did, the State's objection to the question. An accused has a right to testify as to his own intentions on matters related to the charge. *State v. Hicks*, 245 N.W.2d 319, 320–321 (Iowa 1976). But a witness ordinarily should not be permitted to state the motive or the intent of other persons. See I Jones on Evidence, § 4:55, p. 503 (Sixth Ed.Gard 1972) and authorities. The trial court was right in sustaining the objection. Defendant's claim to the contrary is without merit.

V. Defendant's remaining assignment asserts the trial court erred in refusing to expand the definitions of premeditation and deliberation in its jury instructions.

■ We believe the substance of the language sought by defendant was included in instructions 14 and 16 as given by the trial court. Accordingly, the following language is dispositive of this assignment:

" * * * Instructions are considered as a whole and not piecemeal. (Authority). A party cannot complain if instructions fail to emphasize circumstances favorable to him. This is precisely what instructions should avoid. If an instruction covers the legal principles involved, as they are raised by the facts in the case, the trial court has the right to choose its own language to best accomplish that purpose. (Authority). * * *." *State v. Robinette*, 216 N.W.2d 317, 318 (Iowa 1974).

We find no reversible error. The judgment of the trial court is hereby affirmed.

AFFIRMED.