STATE of Iowa, Appellee,

v.

Terrance Joseph BLANFORD, Appellant.

No. 64366.

Supreme Court of Iowa.

May 13, 1981.

Walter W. Rothschild, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE, and SCHULTZ, JJ.

LeGRAND, Justice.

Culminating a stormy domestic relationship, defendant was charged with attempt to commit murder in assaults upon both Harold Hickman, his father-in-law, and Leola Hickman, his mother-in-law, in violation of section 707.11, Supplement to The Code 1977. He was also charged with the crime of burglary in violation of section 713.2, Supplement to The Code 1977, committed by breaking into the Hickman home in connection with the assaults upon them. Following a bench trial, the court found defendant innocent on the two charges of attempted murder, but convicted him in each case of the included offense of assault with intent to inflict serious injury in violation of section 708.1, Supplement to The Code 1977. He was sentenced to serve not more than two years on each assault charge and not more than twenty-five years on the burglary conviction.

Defendant asserts four grounds for reversal:

1. Error in requiring him to submit to an in-custody psychiatric evaluation while he was at liberty on bond.
2. Error in relying on facts not in evidence.
3. Error in allowing Police Officer Dwyer to testify concerning oral statements made by defendant after his arrest.
4. Error in failing to comply with defendant's request for a special finding concerning his defense of diminished responsibility.

I. We consider first the alleged error in receiving Officer Dwyer's testimony. This raises the question whether defendant's incriminating statements to the officer were made in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Before defendant was questioned, he was given his *Miranda* rights. He made inquiry concerning how to obtain an attorney. He was told that if he could not afford a lawyer, the court would appoint one for him without charge. He did not then request one. The defendant signed a waiver and thereafter made certain statements in response to police interrogation. At some point he asked for an attorney, and questioning immediately stopped. The specific error asserted here is that he was given erroneous, misleading, and confusing information concerning his right to have an attorney during interrogation, which motivated him to make statements he would not otherwise have made.

To put this matter in proper perspective, we detail the circumstances under which defendant was interrogated at the Waterloo police station.

After committing the assaults on the Hickmans, defendant left the scene and drove to Des Moines. Realizing the authorities would be looking for him, he determined to give himself up. He returned to Waterloo and surrendered himself at the police station, where he was promptly placed under arrest by Officers Dwyer and Damon. His *Miranda* rights were read to him and a "standard" waiver form was submitted to him, which he signed. We set it out in full:

### WAIVER

I, _Terrance Joseph Blanford_, have been informed at _10:45 P.M._ o'clock _____ m on the _9th_ day of _October_, 19 _78_:

a. That I have the right not to talk with or say anything to _Det. Dwyer_ and _Det. Damon_ whom I know to be members of the Waterloo, Iowa Police Department.

b. That anything I say can and will later be used against me in a Court of Law.

c. That I have the right to speak or confer with an attorney prior to and during any interrogation by members of the Waterloo, Iowa Police Department, and that

if I cannot afford to hire an attorney, one will be appointed by the court to represent me before any questioning, if I wish one.

Having read this Waiver and been informed orally of the contents of it and understanding the nature of these rights, I do consent to talk with these members of the Waterloo, Iowa Police Department.

WITNESSES:

SIGNED:  Terry Blanford

S. E. Dwyer III

D. P. Damon

---

A reading of this instrument discloses that all the formal requirements of *Miranda* were met and it is not claimed otherwise; but defendant asserts he was misled and confused by Officer Dwyer's response to his inquiry concerning his right to a lawyer. Thus the issue before us concerns not the literal terms of the warnings given and the waiver signed but rather whether these were robbed of their intended effect by the "conflicting" statements concerning how and when defendant could secure a lawyer.

We set out much of Officer Dwyer's testimony dealing with this matter:

A.  ... When ... the rights were given to him, he asked that part about the attorney. And he wanted to know if he could get one without having to pay for one.

Q.  ... And what did you tell him, Officer?

A.  I said that's up to the Court to decide on a court appointed attorney.

Q.  And it goes without saying there wasn't a court present; was there?

A.  No.

Q.  Did you tell him that he had a right to have an attorney if he was unable to pay for one present at the time of questioning?

A.  It was stated in the waiver form, that's exactly how it was read to him.

Q.  Well, the waiver says that I have a right to speak or confer with an attorney prior to and during the interrogation by members of the Waterloo Police Department.

A.  Uh-huh.

Q.  But when he asked you whether he could have a lawyer without paying for him you told him that that would be up to a court; is that right?

A.  That's correct.

Q.  And at no time was he told that he could have a lawyer at state expense present during questioning?

A.  He never questioned it.

Q.  I'm not asking you that. Was he told that?

A.  No.

Q.  Now, to the best of your recollection, Officer, and I don't want to unduly pursue this point, but with respect to his question relating to whether he could obtain a lawyer without paying for one, what was his question to you?

A.  His question was does that mean that he gets a lawyer without having to pay for one.

Q.  Okay. And what was your response to him?

A.  I said the Court decides who gets a Court appointed attorney. If you would qualify you'd get one.

■ *Miranda* warnings must be both timely and adequate before statements made during custodial interrogation, either inculpatory or exculpatory, are admissible. *State v. Matlock*, 289 N.W.2d 625, 627 (Iowa 1980); *State v. Hansen*, 286 N.W.2d 163, 168–69 (Iowa 1979); *State v. Jump*, 269 N.W.2d 417, 423 (Iowa 1978).

This principle is well stated in *Coyote v. United States*, 380 F.2d 305, 308 (10th Cir. 1967) *cert. den.* 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967), as follows:

Surely *Miranda* is not a ritual of words to be recited by rote according to didactic niceties. What *Miranda* does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.

The specific complaint here—that defendant was confused and misled by conflicting instructions concerning representation by counsel—has been the subject of a number of decisions elsewhere. They are not in complete accord, although apparent differences are usually explained by the finding in the particular case that the information given either was, or was not, confusing, contradictory, or ambiguous.

Failure to warn defendant that he had a right to immediate appointment of counsel at the time of interrogation was held not violative of his constitutional rights in *United States ex rel. Placek v. Illinois*, 546 F.2d 1298, 1300 (7th Cir. 1976); *United States v. Lamia*, 429 F.2d 373, 376–77 (2d Cir. 1970), *cert. den.* 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146; *People v. Johnson*, 90 Mich. App. 415, 282 N.W.2d 340, 342 (1979).

*United States v. Twomey*, 467 F.2d 1248, 1250 (7th Cir. 1972), relied on by defendant is a seventh circuit case as is *Placek*. Although they reach opposite results, *Placek* distinguishes the two by pointing out the warnings in *Twomey* were internally confusing and contradictory. Those in *Placek* were not. *See also United States v. Garcia*, 431 F.2d 134 (9th Cir. 1970) and *Perez v. People*, 176 Colo. 505, 491 P.2d 969, 970 (1971).

■ Thus each case must be resolved on its own total circumstances in deciding if a defendant's rights were violated. The ultimate question is: Did defendant receive a clear and understandable warning of his rights and was his waiver a truly voluntary one?

As pointed out in *Coyote*, 380 F.2d at 308, it is "always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel." However, we should reject such protestations when the surrounding circumstances clearly demonstrate that cannot be true. We believe this is such a case.

Defendant was told he could have an attorney both before and during interrogation. The fact that the court would appoint counsel upon proper showing in no way derogated his rights as explained to him. He had already been advised he need not talk to the officers at all. He had a ready and available remedy: silence. And it was one he understood, for he later terminated the interrogation by asking for an attorney. Certainly he was as knowledgeable of his rights before questioning as he was during it.

The language used in the warnings given defendant was clear and non-technical. He did not take advantage of them. His waiver was unequivocal. We can find nothing to support the claim defendant did not fully understand what he could do or what he did do. He cannot now recant by claiming he was imposed upon.

In reaching this conclusion we have not overlooked the conduct of the police in refusing to let Ross Randall, a Waterloo attorney, talk to defendant at the lawyer's request. We believe the trial court properly held that a suspect's request for counsel must be honored; a lawyer's request for a client need not be. It is true Mr. Randall was representing defendant in his pending dissolution action. It is also true his call was made at the request of defendant's brother. However, these matters were not known to the police, and it remains uncontroverted that defendant did not then request a lawyer. We may differ as to whether the police *should* have told defendant of Mr. Randall's call. The question, however, is whether they were *obliged* to do so. We find no basis for saying they were.

We hold defendant's constitutional rights under *Miranda* were not violated and that the statements made to Officer Dwyer were admissible.

II. Defendant alleges there was error because the trial court neglected to make a special finding concerning his defense of diminished responsibility.

Iowa Rules of Criminal Procedure, 16(2) provides:

> In a case tried without a jury the court shall find the facts specially and on the record, separately stating its conclusions of law and directing an appropriate judgment.

■ At the conclusion of the trial, defendant filed a motion asking the trial court to make a special finding on the defense of diminished responsibility. No such finding was made. Later defendant raised this same issue in his motion for new trial. In ruling on the new trial motion, the trial court said:

> The Court, in entering its order, found that with respect to the crime of assault that defendant did commit an assault with the intent to inflict serious injury. Further, that with respect to the crime of burglary the Court found that the defendant entered the premises at 712 Upton with the intent of "removing his wife from the premises" which is an assault and that the elements as set forth on page 12 included the element of entry with "intent to commit an assault." The opinion specifically finds intent with respect to those two crimes and without specifically saying so, rejects the defense of diminished capacity....
>
> [T]he defendant contends that the court erred in failing to make a special finding as to whether the defendant was suffering from any mental illness or diminished capacity at the time in question. [T]he court concludes this was done inferentially [based upon the reasoning in the above paragraph] and accordingly the motion for new trial should be overruled [as to this ground.]

We could perhaps dispose of defendant's complaint under the general rule that inde-pendent issues not specifically ruled on in the findings but inconsistent with the judgment are deemed to have been decided adversely to the losing party. *Bahnsen v. Rabe*, 276 N.W.2d 413, 414 (Iowa 1979). However, we need not go that route because if there was error, it has been corrected by the ruling on the motion for new trial. The present case is distinguishable from *State v. Matlock*, 289 N.W.2d 625, 629 (Iowa 1980), where we held facts not found by the judge who tried the case cannot be later supplied by a finding of a *different* judge. We see no reason why the trial judge may not amplify his own findings to meet objections raised in a post trial motion. We decide against defendant on this issue.

■ III. Defendant also asserts error in requiring him to submit to psychiatric evaluation as an in-patient rather than as an out-patient. He concedes the state was entitled to the evaluation in view of his defense of diminished responsibility. *See State v. Seehan*, 258 N.W.2d 374, 377 (Iowa 1977); Iowa R.Crim.P. 10(10)(b)(2). However, he says the order requiring hospital confinement during the evaluation violates both his right to liberty pending trial and the presumption of innocence.

In *Seehan*, 258 N.W.2d at 377–78, we said trial courts have inherent power to order a psychiatric examination once a defendant's sanity becomes an issue. May a court order a defendant to confine himself in a hospital for this purpose? This question has never been decided in Iowa. It seems to have had little consideration elsewhere, either.

The only case authority found is *Marcey v. Harris*, 400 F.2d 772, 774 (D.C.C.A.1968), where the court said a defendant released on bail (as was defendant in the present case) should not be required to submit to psychological examination as an in-patient under 18 U.S.C. § 3146, which is not unlike § 811.2, The Code. But the court went on to say:

> We therefore hold that if a defendant so requests, his commitment shall be limited to examination on an outpatient ba-

sis. However, inpatient commitment shall be ordered if the court is advised by a report of the hospital authorities, setting forth reasonable grounds, that such inpatient commitment is necessary to assure an effective examination.

The record discloses the trial court first ordered defendant's examination at the Iowa Medical Security Facility at Oakdale as an out-patient. Later, the state asked the trial court to amend its order because Oakdale would not take defendant as an out-patient. The motion further stated the Iowa Psychiatric Hospital at Iowa City would evaluate defendant as an out-patient but would not produce any staff member to testify at trial.

We do not ignore the fact that an evaluation could have been had at the Iowa Psychiatric Hospital and that the proper persons could have been subpoenaed as witnesses in spite of their protest. However, this would pose an unsatisfactory prosecutor-witness relationship, not only for this case but for future trials when similar evaluations were required.

We believe *Marcey*, 400 F.2d at 774, expresses the proper rationale under present circumstances. A defendant out on bail should, if that course is practical, be examined as an out-patient. However, if that course is not practical, the state should not lose its right to the evaluation. The trial court has discretion to order defendant to submit to reasonable custodial evaluation. Unless there is an abuse of discretion, we will not interfere. There was no abuse of discretion in this case.

IV. The last issue raises alleged error in including facts not in the record as a basis for the court's decision.

The state concedes the trial court recited some details not in evidence concerning what happened during and after defendant's assault on his wife. These matters were collateral to the charges for which defendant was convicted—assaults on his mother-in-law and father-in-law—and served only as background for defendant's conduct.

The assault upon defendant's wife was the subject of considerable testimony. The objectionable matter only added to what was already in evidence. It presented nothing new, only more, about the facts leading up to these crimes.

In his motion for a new trial, defendant asserted it was error to admit *any* evidence concerning the assault on his wife. We disagree. The evidence was relevant on the question of motive. It formed an integral part of this whole sorry affair. Without it defendant's rash conduct was entirely senseless.

Defendant has now narrowed his complaint to the use of non-evidentiary facts in the trial court's findings. It is, of course, always error to consider facts not in evidence, but it is not always reversible error. Here those added facts could not have altered the result. They merely embellished the story, already quite detailed, of defendant's assault on his wife and their actions immediately afterwards. None of this was important to establishing defendant's guilt. The basic facts of the assault were already properly in evidence. We find the trial court's erroneous consideration of facts outside the record was harmless beyond a reasonable doubt. *See State v. Ivy*, 300 N.W.2d 310, 314 (Iowa 1981).

V. Finding no reversible error, we affirm the judgments.

AFFIRMED.