**Mark Eugene LEWIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–83–354.

Court of Criminal Appeals of Oklahoma.

Oct. 19, 1984.

Rehearing Denied March 6, 1985.

Thomas W. Burns, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen. of Okl., Robert W. Cole, Asst. Atty. Gen., Terry J. Jenks, Legal Intern, Oklahoma City, for appellee.

OPINION

BRETT, Judge:

The appellant, Mark Eugene Lewis, was convicted in Tulsa County District Court,

Case No. CRF–81–1315, of Murder in the First Degree, 21 O.S.1981, § 701.7(A). The appellant waived his right to a jury trial, and was tried before the Honorable Joe Jennings, District Judge, who sentenced him to life imprisonment. He appeals, and we reverse and remand for a new trial.

█ The dispositive issue on this appeal is one of first impression in our jurisdiction, to-wit: whether a defendant's waiver of his rights to counsel and against self-incrimination is knowingly and intelligently made when the defendant is not informed of his attorney's availability at police headquarters. We hold today that such a waiver is constitutionally invalid.

Appellant, then an eighteen-year-old high school student, was arrested on April 7, 1981 for the bludgeoning death of Gordon Lumpkin.[1] Immediately after the arrest, which occurred at approximately 1:40 p.m., appellant was transported and booked into the Tulsa County Jail.

Soon after his arrest, appellant's parents retained Lawrence Martin, a Tulsa attorney, to represent their son. Martin reported to the sheriff's dispatcher at 3:30 p.m., and then to the jail in an attempt to locate and advise his client. Moments before Martin arrived, however, sheriff's deputies began making arrangements to interrogate appellant, though the actual interrogation did not begin until approximately 3:30 p.m.

Martin, meanwhile, was sent to various locations in the jail and courthouse, prompting him to file a petition for writ of habeas corpus in his frustration. Nearly an hour after he first arrived at the jail, Martin was finally directed to his client by a helpful D.A.'s investigator.

When he located his client, Martin learned that appellant had waived his right to counsel and his right against self-incrimination, and had incriminated himself. However, on Martin's advice, appellant refused to sign a typed statement prepared

by the deputies. Appellant was never told by authorities that Martin was available.

█ Appellant urges us to hold the confession suppressible, based on the holding and supporting rationale of the Oregon Supreme Court in *State v. Haynes,* 288 Or. 59, 602 P.2d 272 (1979). We are persuaded by appellant's argument, we agree with the holding and logic of the Oregon court that

the issue of a suspect's access to counsel enters cases like the present as an aspect of his right to answer questions or provide incriminating testimony only voluntarily. Or. Const. art. I, § 12, U.S. Const. amend. V.[2] It is the incriminating evidence so obtained that defendant seeks to suppress in this case as in all the cases we have cited. No one so far has suggested that interference with an arrested person's access to a lawyer, however improper and subject to other remedies, would itself lead to a reversal of a subsequent conviction if defendant in fact said nothing and no evidence was obtained as a result nor other harm done to his eventual defense .... [T]he law does not impose the benefit of those efforts on a defendant who rejects them. They may be waived just as the right to remain silent itself may be waived. There is no law that a person in custody may not speak if he so chooses, and without a lawyer's advice. *The crucial point is that it must be a knowing choice as well as voluntary in the sense of not being coerced.* As the United States Supreme Court recently stated in *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), when *the state claims waiver it has the burden to show 'an intentional relinquishment or abandonment of a known right or privilege,'* quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

---

1. A full account of the facts may be found in the companion case of *Lumpkin v. State,* 683 P.2d 985 (Okl.Cr.1984)

2. Oklahoma's constitution provision against self-incrimination is found at OKLA. CONST. art II, § 21. An accused person's right to counsel in Oklahoma is established at OKLA. CONST. art. II, § 20.

To pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run. A suspect indifferent to the first offer may well react quite differently to the second. If the attorney appears on request of one's family, that fact may inspire additional confidence. He, too, will perhaps be sent away. We do not hold with the New York court that this decision can be made only in the attorney's presence, although in practice this would obviate the recurring problems of proof that have been mentioned. But ... *when law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot thereafter rely on defendant's 'waiver' for the use of his subsequent uncounseled statements or resulting evidence against him.* We believe this rule protects the suspect's right under article I, section 12, and the federal fifth and 14th amendments not to testify against himself, and also that it suffices to satisfy the statement quoted by defendant from *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] that police interference with consultations between defendant and an attorney 'constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake.' 384 U.S. at 465, n. 35, 86 S.Ct. at 1623.

602 P.2d at 278–279. (Emphasis added).

Our agreement with the Oregon Supreme Court is strengthened by similar rulings in other jurisdictions. *See Commonwealth v. Hilliard,* 471 Pa. 318, 370 A.2d 322 (1977) (if counsel has expressed a desire to be present during interrogation, a waiver of counsel in counsel's absence should be invalid as a matter of law); *People v. Arthur,* 22 N.Y.2d 325, 239 N.E.2d 537, 292 N.Y.S.2d 663 (1976); *Commonwealth v. McKenna,* 355 Mass. 313, 244 N.E.2d 560 (1969); *People v. Donovan,* 13 N.Y.2d 148, 193 N.E.2d 628, 243 N.Y.S.2d 841 (1963).

The State would have us adopt what is apparently the minority rule. In *State v. Blanford,* 306 N.W.2d 93 (Iowa 1981), the Iowa Supreme Court was faced with the same issue, but instead held that while "a suspect's request for counsel must be honored; a lawyer's request for a client need not be." *Id.* at 96. While we agree generally with this rule, we disagree with its application here. It is one thing to say a lawyer has no right to see a client; it is quite another to say that an accused person knowingly and intelligently waived his right to counsel and his right against self incrimination when it was not made known to him that his lawyer was, in effect, knocking at the jail house door.

■ It also has been noted that there is no conclusive proof Attorney Martin was purposefully kept away from his client. However, we agree with the New York Court of Appeals in *People v. Pinzon,* 44 N.Y.2d 458, 464, 406 N.Y.S.2d 268, 271, 377 N.E.2d 721, 725 (1978), that,

> [o]nce a person has been taken into custody, the burden is on the police to keep track of him and to establish and maintain procedures which will insure that an attorney representing him may communicate with him and with the officials responsible for the investigation, without unreasonable delay ....

Furthermore, we cannot agree with the statement in Judge Bussey's dissent that "The record is void of any evidence that law enforcement personnel, ... purposely prevented Attorney Martin from seeing him [appellant]; nor does it disclose the employment of Martin by the defendant or any person expressly authorized by him to do so."

Admittedly the appellant did not authorize Attorney Martin to represent him, but the eighteen-year-old high school student's parents did employ Martin to intervene in the boy's behalf, as herein before set out, thereby fulfilling their parental duties. Certainly, the boy did not authorize the

employment of Attorney Martin, because he was unaware of Mr. Martin's efforts to locate him. The evidence does show that Lt. Spears, who interrogated appellant, had discussion with the sheriff's dispatcher regarding the taking of the confession at about 3:15 p.m. Attorney Martin arrived at the same dispatcher's office at 3:30 p.m. to make his first inquiry about appellant. He was told that the office had no knowledge of the appellant, and he directed Mr. Martin to the jail. While this is not absolute proof that Martin was purposefully kept from his client, it certainly is compelling circumstantial evidence leading to that conclusion.

Although Lewis waived his right to counsel and his right against self-incrimination, this cannot be considered a valid waiver as he was never told counsel was there to see him. We therefore hold this statement should have been suppressed as obtained in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and OKLA. CONST., art. II, §§ 7, 20, 21.

Accordingly, the judgment and sentence is REVERSED, and the case REMANDED for a new trial.

BUSSEY, Presiding Judge, dissenting:

The record is void of any evidence that law enforcement personnel, in order to continue the questioning of the defendant without interruption, purposefully prevented Attorney Martin from seeing him; nor, does it disclose the employment of Martin by the defendant or any person expressly authorized by him to do so. To the contrary, when questioned concerning his desire for counsel, the defendant rejected the opportunity.[1] It is clear to me that the defendant was not deprived of any constitutional right and that his confession was freely and voluntarily made after he had received miranda warnings. See, *State v. Blansford,* supra. The proof of the de-

fendant's guilt is overwhelming. The conviction should be affirmed.

---

1. The trial and preliminary hearing record reveals the following:

  Q. Did you ask for a lawyer?

    A. No, sir. (Trial Tr. 101)

  Q. Did you ask anybody to get you a lawyer?

    Q. Do you remember them telling you you had the right to an attorney?

    A. Yes. (P.H. Tr. 165).