STATE of Iowa, Plaintiff-Appellee,

v.

Richard D. WINEMILLER,
Defendant-Appellant.

No. 86–760.

Court of Appeals of Iowa.

June 24, 1987.

Charles Harrington, Chief Appellate Defender, and B. John Burns, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen. and Annette J. Scieszinski, Monroe County Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Defendant appeals his conviction for murder in the first degree. We affirm.

The murder victim, James Brown, was found at his home on August 31, 1985. He had been shot twice with his own shotgun. Date of death was not definitely established.

On October 25, 1985, Richard Winemiller was charged by trial information with murder in the first degree. Jury trial commenced on April 29, 1986, and on May 7, 1986, the jury found Winemiller guilty. On

May 22, 1986, judgment was entered on the conviction and Winemiller was sentenced to life imprisonment. Our scope of review is for the correction of errors at law. Iowa R.App.P. 4.

Defendant first asserts there was insufficient evidence in the record for a rational jury to find beyond a reasonable doubt, that he was guilty of murder. In reviewing the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. *State v. Blair,* 347 N.W.2d 416, 418–19 (Iowa 1984). A jury verdict is binding upon us unless the record lacks substantial evidence to support the charge. *Id.* at 419. Substantial evidence means evidence which would convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* In weighing the sufficiency of the evidence, we take all the evidence into consideration, both direct and circumstantial. *State v. Erving,* 346 N.W.2d 833, 835 (Iowa 1984). Circumstantial evidence is not inferior to direct evidence; both are equally probative. Iowa R.App.P. 14(f)(16).

■ The defendant claims the evidence was insufficient for a rational jury to conclude he was the individual who killed Brown. We disagree. Various witnesses testified that Winemiller was in possession of the victim's car, checks, and the murder weapon in the time period following the murder. Winemiller's palm print was found on a spent shell found at the scene of the crime. A pubic hair similar to defendant's pubic hair was found on a t-shirt near the bed where the body was found. Winemiller's fingerprints were found on checks written on Brown's bank account during the week following the victim's death. Handwriting analysis established that Winemiller had signed these checks. The defendant made an inconsistent statement when he denied writing the checks. He also registered in a campsite under a false name in the period immediately after the crime. We note that a defendant's inconsistent statements are probative circumstantial evidence from which the jury

may infer guilt. *State v. Schrier,* 300 N.W.2d 305, 309 (Iowa 1981). When all the evidence in this record is viewed in the light most favorable to the verdict, a fair inference is established that Winemiller was the perpetrator of the killing of Brown. This inference rises above mere speculation, suspicion, or conjecture.

■ Winemiller also asserts that there was insufficient evidence to support a finding beyond a reasonable doubt that he killed Brown "willfully, deliberately, and with premeditation," as required by Iowa Code section 707.2 in order to reach a finding of murder in the first degree. The State is required to prove all the elements of first degree murder beyond a reasonable doubt. *State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981). The State must show that the defendant killed the victim with malice aforethought and in a willful, deliberate, and premeditated manner, and can do so by circumstantial evidence in one or more ways: (1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from entire relationships between defendant and victim; and (3) evidence regarding the nature of the killing. *State v. Wilkens,* 346 N.W.2d 16 (Iowa 1984). We believe that a rational jury would have no difficulty finding that the killing was deliberate and premeditated. The victim's automobile and checks were stolen and used by defendant, thereby providing a reasonable motive. The defendant's palm print was found on a spent shotgun shell that was found on the dresser in the room where the body was found. The shotgun was fired twice, both blasts hitting the victim. Testimony at trial established that in order to fire twice, the killer would have had to manually pump the gun to expel the used shell and then put a new shell into the chamber. This evidence regarding the nature of the killing supports an inference of premeditation and deliberation. Our conclusion on this issue also disposes of defendant's claim that the jury instructions given by the trial court were not sustained by evidence in the record.

The defendant further argues that the trial court abused its discretion in admit-

ting photographs of Brown's body at the trial. The basic test is the relevancy of the pictures. *State v. Fuhrmann*, 257 N.W.2d 619, 624–25 (Iowa 1977). Death pictures are not ordinarily excluded because they are gruesome, for murder is by nature a gruesome business. *State v. Seehan*, 258 N.W.2d 374, 378 (Iowa 1977). The decision to admit photographs is within the trial court's discretion and we will only reverse such a decision if there has been an abuse of the court's discretion. *State v. Chadwick*, 328 N.W.2d 913, 917 (Iowa 1983).

■ In the present case, the prosecution voluntarily limited the number of photographs shown. The court then excluded some photographs it considered cumulative. As to the remaining photographs, the court admitted them, finding that they might be reasonably necessary for the State to establish certain elements of the crime. We cannot say that the trial court abused its discretion in admitting the remaining photographs. The photographs showed the spatial relationships of the murder scene, the position of the body, and various details which the State argued were necessary for the presentation of its case to the jury. We conclude that the trial court did not abuse its discretion in finding, as to the pictures admitted, that their gruesome effect did not outweigh their evidentiary value.

Defendant's final claim is that the district court abused its discretion in permitting an Iowa Division of Criminal Investigation criminalist, Dennis Chapman, to testify using a recorded recollection. Chapman testified that he needed to refer to a report to refresh his memory of certain details of the investigation of the crime scene. The court permitted Chapman's testimony pursuant to Iowa Rule of Evidence 612.

■ Iowa Rule of Evidence 612 provides that if a witness uses a writing while testifying to refresh his memory, an adverse party is entitled to have the writing produced, inspect it, cross-examine the witness thereon and introduce into evidence portions which relate to the testimony of the witness. Iowa Rule of Evidence 612 is substantially identical to Federal Rule of Evidence 612. Federal courts have stated that the trial court in many instances should liberally allow a witness to refer to records while testifying; however, caution should be exercised to assure the memorandum is not a written summary made specifically for use in court. *Goings v. United States*, 377 F.2d 753, 760 n. 11 (8th Cir. 1967), *cert. denied*, 393 U.S. 883, 89 S.Ct. 191, 21 L.Ed.2d 158 (1968). The necessary foundation for establishing the admissibility of a writing to refresh a witness's recollection is that the witness's recollection be exhausted, that the movant identify the time, place, and person to whom the statement is given, the court is satisfied the writing accurately reflects the witness's statements or the witness acknowledges the accuracy of the writing, and the court is satisfied the document will help in refreshing the person's memory. *Id.* at 760–61. *See also Bankers Trust Co. v. Publicker Industries*, 641 F.2d 1361, 1363 (2nd Cir.1981); *United States v. Jimenez*, 613 F.2d 1373, 1377–78 (5th Cir.1980). It is true that the witness should not read the writing in the guise of refreshment, but the witness may consult the memorandum as he speaks, especially where it is lengthy and detailed. *See State v. Smith*, 291 N.C. 505, 231 S.E.2d 663, 671 (1977); McCormick, *Law of Evidence* at 19 (2nd Ed. 1972).

■ In this case, the criminalist said he was not able to testify as to details of his investigation without reference to his report. He testified as to the circumstances and purposes of the preparation of such reports. The record does not show that Chapman merely recited from the refreshing memorandum. He elaborated on his observations and was cross-examined. The defense had an opportunity to examine the report as required by Rule 612. In these circumstances, we can find no abuse of discretion in the trial court's permitting the witness to refresh his memory with the report of the investigation.

AFFIRMED.