Norma Jane LUMPKIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–181.

Court of Criminal Appeals of Oklahoma.

June 18, 1984.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Terry J. Jenks, Legal Intern, Oklahoma City, for appellee.

## OPINION

PER CURIAM:

Norma Jane Lumpkin was charged with Murder in the First Degree for the killing of her husband, Gilbert Lumpkin. She was tried by a jury in Tulsa County District Court; and upon her conviction, her punishment was assessed as life imprisonment.

In the morning of April 7, 1981, the appellant's husband was beaten to death with a blunt object which the State theorized to be a baseball bat found in the Lumpkin residence.

It was normal for the decedent to carpool to work with his neighbor, Chester Schaeffer, who worked for the same company as decedent. Mr. Schaeffer testified that decedent had told him the day before the killing he was filing for a divorce from appellant, and that the two were experiencing considerable marital difficulties. At approximately 5:35 a.m. April 7, 1981, he saw appellant trying to push start the Lumpkin's Datsun. Next, he saw a different neighbor, Mark Lewis, come around the north side of the Lumpkin trailer home. At 6:30 a.m., Mrs. Lumpkin called Mr. Schaeffer's wife and said her husband was going in late to work as he had to take care of some things.

Once at work, Mr. Schaeffer received several phone calls from his wife and from his daughter, whose home adjoined the Schaeffers'. Mr. Schaeffer called the Tulsa County Sheriff's Office telling them that things were not right at the Lumpkin residence. Deputy Bloss went to the Lumpkin trailer and asked to speak to the decedent. He was informed by appellant that Mr. Lumpkin had gone fishing and she did not know when he'd be back.

Mr. Schaeffer again called the Sheriff's Office to inform them that his daughter had seen appellant load something into the trunk of appellant's blue Pontiac, which appeared to be a body. As Deputy Bloss drove to the Lumpkin residence, he passed Mark Lewis traveling in the opposite direction driving the Lumpkin truck, pulling their boat and trailer. He then saw appellant driving the blue Pontiac at an excessive rate of speed. He turned around and stopped appellant by turning on his overhead lights. Appellant approached his vehicle and acknowledged her high rate of speed. He asked her to come into his vehicle, which she did. He asked if she and decedent were having marital problems. She said they were. He then told her he had received several calls from her neighbors and that they had seen her loading something heavy and bundlesome into her trunk. She said it was just bed clothes. When Deputy Bloss asked if she'd mind if he took a look, she retrieved the trunk key from the ignition. About the time the trunk was being opened, she reportedly said "I guess I've been had." Seeing the body of decedent, Deputy Bloss put appellant under arrest.

Appellant first assigns as error the trial court's refusal to suppress evidence gained by reason of her assertedly illegal arrest. She claims that Deputy Bloss stopped her for speeding, and that this was a mere subterfuge as he was not qualified to, nor did he attempt to cite her for speeding. We find that apart from his stated reason for stopping her, that being excessive speed, that he had sufficient information to warrant the investigative stop.

Appellant relies upon our recent opinion in *Revels v. State*, 666 P.2d 1298 (Okl.Cr.1983), to say that the facts known to Deputy Bloss did not justify an investigative stop of appellant. In *Revels*, the defendant simply exited the office of a used car lot late in the evening. We held that the officer was not justified in making an investigative stop without specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant the intrusion [citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. The test applied to determine whether a stop is reasonable is:

> [W]ould the facts available to the officer at the moment of seizure ... 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. Deputy Bloss had received several calls to investigate the suspicious conditions prevailing at the Lumpkin household. His information was based on the neighbors' observations, but they would appear to be reliable sources. He had been informed that the Lumpkins were experiencing marital problems, including a potential divorce. He was also informed that appellant curiously loaded what appeared to be a body into the trunk of her vehicle. When he then observed appellant driving her vehicle at an excessive rate of speed just behind the Lumpkins' truck and boat which was being driven by Mark Lewis, he was justified in detaining appellant for investigative purposes. Probable cause to arrest her was not required. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *McAlpine v. State*, 604 P.2d 1258 (Okl.Cr.1980); *Woodruff v. State*, 582 P.2d 1330 (Okl.Cr.1978).

We view the search as consensual, and not conducted pursuant to an illegal arrest as contended by appellant. *McAlpine* and *Woodruff*, supra. The evidence obtained was necessarily admissible at trial, and this assignment must fail.

Next, appellant claims her consent to Deputy Bloss' search of her trunk was not shown to have been voluntarily given by clear and convincing evidence. The test of voluntariness is that it is to be judged from the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The State has the burden to prove the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

As we previously stated, we believe the search was consensual and not the product of duress or coercion. Her behavior gave no hint of an objection to the search. We feel the State has met its burden.

The appellant makes two arguments concerning her claim of self-defense. She maintains that she should have been allowed to introduce evidence of her husband's prior violent acts and threats against her and that an instruction on self-defense should have been given to the jury. The key to resolving both these issues is whether the appellant presented sufficient evidence of self-defense. *Harris v. State*, 400 P.2d 64 (Okl.Cr.1965) (evidence of victim's character and behavior); *Cordray v. State*, 268 P.2d 316 (Okl.Cr.1954) (right to jury instruction). In the present case the only evidence even suggesting the issue of self-defense was the testimony of Deputy Bloss that when the trunk of the car was opened the appellant said, "Well, I guess I've been had," followed by, "I was afraid of him and I had to shoot him." This statement by itself does not sufficiently establish the defense of self-defense. The trial court was justified in refusing to allow the evidence or give the instruction.

Next, appellant assigns as fundamental error the trial court's failure to instruct the jury on lesser included offenses. She claims the trial court had a duty to so instruct though her trial attorney specifically requested the court to not instruct on lesser included offenses. The offenses on which appellant believes the jury should have been instructed include: "Heat of Passion" manslaughter; misdemeanor-manslaughter; and, second degree murder.

988

■ There is no evidence to suggest that the killing occurred in the heat of passion. Appellant relies on our opinion in *Morgan v. State*, 536 P.2d 952 (Okl.Cr.1975), for the proposition that when the evidence in a case involving murder in the first degree necessitates an instruction of self-defense, the trial court should as well instruct on first degree manslaughter. Appellant's reliance on *Morgan* is unfounded since there was not sufficient evidence of self-defense to warrant an instruction. The trial court did not err in this regard.

Appellant relies upon our opinion in *Tarter v. State*, 359 P.2d 596 (Okl.Cr.1961), for the proposition that the trial court should have, without request, instructed as to any lesser included offenses suggested by the evidence. Her ground for this is the expert testimony of the medical examiner who testified that injuries to the posterior region of decedent's head could have been sustained when he fell backwards upon a metal bed frame. This, appellant claims, suggests that only a misdemeanor had been perpetrated, or possibly an act imminently dangerous evincing a depraved mind; therefore, appellant may have been found guilty of misdemeanor-manslaughter or murder in the second degree rather than murder in the first degree.

■ The evidence does not support misdemeanor-manslaughter. Besides the numerous blows and lacerations to decedent's head, the medical examiner reported a fractured cartilage and bruising in the anterior neck as well as various lacerations to the hands. Diethyl ether, a component of starter fluid, was also detected in the body.

In *Rhea v. State*, 668 P.2d 1164 (Okl.Cr. 1983), we held that no error occurred by the trial court's failure to instruct as to lesser included crimes because defense counsel specifically stated that he had no objections to the instructions. Waiver of error in the instructions prevented appellate review. In the present case, defense counsel requested that no instructions of lesser included offenses be given. Any error which may have occurred has been effectively waived.

Appellant's final assignment of error is that her trial attorney did not afford reasonably competent assistance of counsel. *Johnson v. State*, 620 P.2d 1311 (Okl.Cr. 1980). Therefore, she claims her Sixth Amendment right to effective assistance of counsel was denied. She claims that her attorney performed well until the trial judge prevented evidence of the victim's violent tendencies from being admitted. Her attorney also failed to present expert testimony that the killing may have resulted from appellant's mental illness.

■ We have consistently held, as we held in *Johnson*, that reasonably competent assistance of counsel will not be established on appeal by merely pointing out possible errors in counsel's judgment or lack of success in defense. See *Taylor v. State*, 659 P.2d 362 (Okl.Cr.1983). Upon a careful review of the record and with an eye toward counsel's overall performance, we cannot say that appellant's Sixth Amendment right to counsel was violated.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.