The STATE of Oklahoma, Appellant,

v.

Jill Lynette KUDRON, Darrell Lee Matthews, Steve Reel, Appellees.

No. S–90–357.

Court of Criminal Appeals of Oklahoma.

Aug. 7, 1991.

Robert H. Macy, Dist. Atty., Dist. No. 7, Timothy W. Ogilvie, Asst. Dist. Atty., Andrea J. Poteet, Legal Intern, Oklahoma City, Okl., for appellant.

## OPINION

JOHNSON, Judge:

This an appeal brought by the State of Oklahoma from an order of the District Court, Oklahoma County, suppressing all evidence seized in a search of the defendants' residence, including that evidence which was particularly described in the search warrant. Said order by District Judge Jack R. Parr was issued pursuant to Title 22 O.S.1981, § 1089.1 and sustained the Magistrate's ruling suppressing the evidence aforesaid.

The search which led to the seizure of the subject evidence was made pursuant to a warrant issued to Oklahoma City officers upon the affidavit of Detective William A. Pierce of the Oklahoma City Police Department. Said warrant authorized the search for and seizure of: "a brown bear skin rug, a plexi-glass case, rectangular design approx. 12 × 18 inches, inside is four quail, one racoon on a piece of wood in the praying position, one US Marine knife with gold inlay in case, one flying pheasant, one standing pheasant on a piece of wood, one four-wheel ATV, red in color." However, once at the residence, the search resulted in the seizure of hundreds of items.

As a result, criminal charges were filed as follows:

CRF–88–5504: One count of Concealing Stolen Property against Jill Kudron, Darrell Matthews, Steve Reel and Jay Tatum.

CRF–88–5575: 23 counts of Concealing Stolen Property against Jill Kudron and Darrell Matthews.

CRF–88–5983: 7 counts of Concealing Stolen Property against Jill Kudron and Darrell Matthews.

CRF–88–6357: 4 counts of Burglary in the Second Degree against Jill Kudron, Darrell Matthews and Steve Reel.

At the conclusion of the preliminary hearing, the magistrate, the Honorable Wendell I. Smith, overruled all motions to suppress, granted the State leave to amend the Information to conform to the proof and bound over all the defendants for trial. Amended Informations were subsequently filed.

Defense counsel filed a Motion To Remand, which Judge Leamon Freeman granted and set for further preliminary hearing before Judge Wendell I. Smith.

At the hearing, Judge Smith consolidated CRF–88–6357 and CRF–88–5504 under CRF–88–5504. Also, he consolidated CRF–88–5983 and CRF–88–5575 under CRF–88–5575. The defendants were bound over for trial. Amended Informations reflecting the aforesaid consolidations were filed by the State.

The defendants, on May 26, 1989, filed Motions to Suppress, which were heard by Judge Bana Blasdel, who sustained the motion as to each defendant and ordered the dismissal of CRF–88–5504 and CRF–88–5575.

On June 7, 1989, the State, "pursuant to the authority of *Robinson v. State*, 544 P.2d 545 (Okl.Cr.1975)", refiled all of the counts of CRF–88–5504 and CRF–88–5575 in a single Information under Case No. CRF–89–2904.

On August 4 and September 14, 1989, the Preliminary Hearing on this case was set before Judge Clinton Dennis, who reviewed the testimony of the Preliminary Hearings held before Judge Smith and heard additional testimony from Detective William A. Pierce. Judge Dennis ruled that the evidence was illegally obtained and thus, sustained defense motions to suppress and demurrers to the evidence. The State appealed pursuant to Title 22 O.S.1981, § 1089.1.

On October 4, 1989, said appeal was heard by Judge Jack R. Parr, who upheld the ruling of Judge Dennis. The State thereafter filed its appeal to this Court.

In his affidavit for a search warrant and from his testimony at the preliminary hearing, Detective Pierce related that as a result of his continuing investigative work on numerous burglaries occurring in the Oklahoma City area, he was furnished with the names of three suspects. One was Jay Stanley Tatum, a defendant herein and another, a Michelle Lee Matthews, who had been charged previously with six counts of concealing stolen property, which was recovered as a result of a search of a residence located at 5304 S. Independence, where the suspects resided. It was learned that the suspects subsequently vacated that residence. Detective Pierce was informed by Jay Tatum's mother that he had moved with some friends to 15110 Falcon Way in Choctaw. He confirmed that there was an outstanding arrest warrant on said Michelle Lee Matthews for the aforementioned charge and believing that the suspects would be still living together, proceeded to that address with the Choctaw police.

On September 23, 1988, Detective Pierce went to the residence where the defendants resided. Darrell Lee Matthews, one of the defendants herein, opened the door. After Pierce identified himself and showed his credentials, Matthews invited him into the foyer. At that time, Jay Tatum, who testified that Pierce saw him through his bedroom window and beckoned him to come to the front, entered the living room. Detective Pierce informed both of them that he had a warrant for the arrest of Michelle Matthews and was there for that purpose. (It is noted that on cross-examination, Pierce admitted that he had no warrant in his possession for Michelle Matthews and that he had no concrete knowledge that she lived at or was going to be at the residence). Tatum and Matthews indicated that she was not there and that she did not live there.

Detective Pierce further testified that he heard what he perceived to be persons moving something around in the den and asked permission to look around. He stated that Matthews did not respond, but Tatum, who had his arms at his sides, bent his lower right arm with the palm of his hand opened up. Detective Pierce took the alleged "hand gesture" as permission to search the premises. On cross-examination, he admitted that the "hand gesture" could have meant "what can I do about it if you want to search?", and indicated that on occasions, it was not unusual for persons to make that sort of gesture when police are in their homes. He testified that he intended to enter the residence with or without the consent of the occupants.

When Detective Pierce looked through other parts of the residence, he noticed in plain view some distinctive items which he recalled were listed in some of the burglary reports he had reviewed. At that point, he asked the defendants to execute a search waiver since he now wanted to search for property and not for a person. All of the defendants refused to sign a search waiver. Thereupon, he left the residence leaving Choctaw and Oklahoma City officers to secure same while he obtained a search warrant.

Jay Tatum, who testified for the State, denied that he made any gesture consenting to a search of the residence. He related that after the officers entered the residence, the other two occupants came into the living room. Officer Pierce repeatedly asked was anyone else in the residence. He ordered them to remain in the living room while another officer walked through the house. Meanwhile, Detective Pierce asked them to execute a search waiver, which they refused to execute. After the

officer returned, Detective Pierce left. He later returned with a search warrant.

The specific items named in the warrant as well as more than five hundred items were seized. Detective Pierce testified that he took a large quantity of burglary reports back with him to the residence. In addition, the defendant, Jay Tatum, pointed out the stolen items room-by-room and Detective Mangion of the Edmond Police Department assisted in seizing items listed in her burglary reports. Based on the volume of stolen property, continuous search and seizures were conducted over a period of approximately eighteen hours. It was necessary to utilize a pick-up truck, a two-ton box truck and a 12x6x6 U–Haul Trailer in several loads. He felt that based on the language in his affidavit to the effect that "much of the property in the residence is the property that has been taken in the numerous Oklahoma City and Edmond burglaries," and the sheer quantity of items which would take more than a month to match with the victims, the State was justified in not constantly going back to obtain a warrant for each item viewed.

■■ The State contends that the entry of the police officers into the defendants' residence was by invitation and that the search of said residence was by consent, freely and voluntarily given, and thus lawful. The State has the burden to show that the defendant knowingly and intelligently waived his rights to a search warrant. *Smith v. State*, 604 P.2d 139 (Okl.Cr.1979); *U.S. v. Tabor*, 722 F.2d 596 (10th Cir.1983). In his findings of fact and conclusions of law, Judge Parr found that Detective Pierce was not given consent to enter the residence of the defendants to serve an arrest warrant on a person, namely Michelle Matthews, who did not reside there. Further, he found that no exigent circumstances were present which justified Pierce's entry into the residence and that the probable cause which led to the issuance of the search warrant was based upon Pierce's observation after said entry. We agree.

The State relies on *Lumpkin v. State*, 683 P.2d 985 (Okl.Cr.1984) to support its position that the District Court failed to consider this Court's holding that consent may be presumed from an individual's conduct. In that case, the defendant was stopped for travelling at an excessive rate of speed and was also being detained for investigative purposes. We held that the encounter was consensual and thus the search incidental thereto did not require consent. We do not find this case applicable.

Further, the State contends that the court failed to consider the alleged "hand gesture" and the fact that none of the defendants voiced an objection to the search. Silence has never been a consent at both civil and criminal law. The State cites several cases from other jurisdictions holding that a defendant's silence in the face of a request to search or a defendant's failure to expressly object to a search is only evidence of consent, but it takes more than just silence.

■■ We will first address the State's contention that the trial court failed to consider the alleged "hand gesture" as evidence of consent. We cannot accept this contention. First, we note that Jay Tatum denied having made the gesture. Second, we note that Detective Pierce admitted that the gesture could be construed several ways. Third, we note that the magistrate, in his findings of fact and conclusions of law, questioned why Officer Pierce asked for permission to search, if, in fact, he felt it necessary to make a protective search of the residence. The magistrate also questioned why he asked the defendants to sign a search waiver if, in fact, he had consent. Logic tells us that the officer knew he had to have the consent as he was not properly allowed to search without the waiver. He wanted the poison fruit but did not obtain it properly. Thus both the magistrate and the trial court, in their independent evaluations of the facts and law, considered the totality of the circumstances and correctly concluded that the search was without consent. We have continually held that the credibility of witnesses and the weight given their testimony is within the exclusive province of the trier of fact, who may be-

lieve or disbelieve the witnesses as it desires. *Renfro v. State*, 607 P.2d 703 (Okl. Cr.1980). Unless the findings below have no support in the record, this Court will not disturb the ruling on appeal. Thus, this contention is without merit.

 We next address the State's contention that silence in the face of a request to search or a defendant's failure to expressly object to a search is evidence of consent. While this Court heretofore has not been confronted with this specific situation, in *Dade v. State*, 188 Okl. 677, 112 P.2d 1102 (1941), we presented a comprehensive analysis of the principles affecting persons when confronted with requests for warrantless searches. There, we quoted 56 C.J. 1180, in construing what conduct on the part of a defendant constitutes a waiver of his constitutional immunity from a warrantless search:

> " * * * it must be clearly shown that consent given to an otherwise illegal search was voluntary, that is, that it was free from coercion, duress, or fraud, and not given merely to avoid resistance. As the constitutional guaranty is not dependent upon any affirmative act of the citizen, the courts do not place the citizen in the position of either contesting an officer's authority by force, or waiving his constitutional rights; but instead they hold that a peaceful submission to a search or seizure is not a consent or invitation, thereto, but is merely a demonstration of regard for the supremacy of the law; * * *."

Before a court holds that a citizen has waived such protection, there should be convincing evidence to that effect. The trier of fact should be slow in finding intentional and voluntary relinquishment of immunity from search without a warrant when from the evidence the matter is somewhat in doubt. *Dade, supra,* 112 P.2d at 1105.

The 10th Circuit has held that there must be clear and positive testimony that consent was "unequivocal and specific;" further, that it was truly and intelligently given. *U.S. v. Abbott,* 546 F.2d 883 (10th Cir.1977); *see also U.S. v. Medlin,* 842 F.2d 1194 (10th Cir.1988). There must be more than a "hand gesture" although that fact, together with others, could be enough to come under the totality rule. *Lumpkin, supra.*

 In light of the aforesaid and the totality of the circumstances herein, we cannot say that the magistrate or the trial court erred in not ruling that the failure of the defendants to expressly object to the search constituted consent.

For the above and foregoing reasons, the District Court rulings are hereby AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT and PARKS, JJ., concur.