2014 OK CR 14

**Patrick Joseph TERRY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–2013–607.

Court of Criminal Appeals of Oklahoma.

Sept. 18, 2014.

An Appeal from the District Court of Ottawa County; the Honorable Robert G. Haney, District Judge.

Keith McArtor, Attorney at Law, Tulsa, OK, attorney for defendant at trial.

Kenneth E. Wright, III, Assistant District Attorney, Miami, OK, Attorney for State at trial.

Mark P. Hoover, Norman, OK, attorney for appellant on appeal.

E. Scott Pruitt, Oklahoma Attorney General, Judy King, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## *SUMMARY OPINION*

A. JOHNSON, Judge.

¶ 1 Appellant Patrick Joseph Terry appeals his felony and misdemeanor convictions from the District Court of Ottawa County in Case No. CF–2012–242. The Honorable Robert G. Haney found Terry guilty in a non-jury trial of Manufacturing a Controlled Dangerous Substance (Methamphetamine) Within 2,000 Feet of a School (Count 1), in violation of 63 O.S.Supp.2012, § 2–401. Possession of a Controlled Dangerous Substance (Count 2), in violation of 63 O.S.2011, § 2–402(A). each after former conviction of two or more felonies, and Unlawful Possession of Drug Paraphernalia (Misdemeanor) (Count 3) in violation of 63 O.S.2011, § 2–405. Judge Haney sentenced Terry to thirty years imprisonment and a $10,000 fine on Count 1,

six years imprisonment and a $1,000 fine on Count 2, and one year in the county jail and a $200 fine on Count 3. Judge Haney ordered the sentences to be served concurrently, without credit for time served. From this Judgment and Sentence, Terry appeals.

¶ 2 This case raises the single issue of whether the warrantless, investigative search of a parolee's home by law enforcement acting on an unidentified informant's tip violated his Fourth Amendment rights. We find reversal is not required and affirm the Judgment and Sentence of the District Court.

## Background

¶ 3 In June 2012, the Ottawa County District Attorney's Office received a tip that Terry, a parolee, was manufacturing methamphetamine in his apartment.[1] As a condition of parole, Terry signed Rules and Conditions of Parole that stated in part: "I understand that at any time or place, I am subject to search. In addition, my vehicle and any property under my control is subject to search." Acting pursuant to Terry's parole agreement, a district attorney investigator accompanied by several police officers conducted a warrantless search of his apartment three weeks after receipt of the tip. Officers found in Terry's bedroom marijuana, baggies, small plastic containers containing methamphetamine residue, syringes, pills, a scale, a glass lid with white powder residue, a razor blade, and a plastic bag containing leftover "mush" from cooking methamphetamine. In the kitchen, police found lighter fluid and drain opener, chemicals commonly used to manufacture methamphetamine.

¶ 4 A closet in Terry's apartment was secured by a combination padlock. Terry said the closet did not belong to him and claimed that the building's maintenance man used the closet to store tools. Police cut off the lock and found more lighter fluid, bottles containing two-layer liquids, a large container of lye, two jugs of muriatic acid, hoses, and several empty boxes of pseudoephedrine pills. In the refrigerator of an unoccupied apartment

---

1. Terry was placed on parole, effective December 10, 2002, following convictions for Attempted Second Degree Burglary, Uttering Two or More Bogus Checks, Concealing Stolen Property and Forgery, each after former conviction of two or more felonies.

accessible from a door in Terry's kitchen,[2] police found a bag containing five reaction vessels recently used for manufacturing methamphetamine.[3]

¶5 Terry, who was outside when the officers arrived, objected to the search, but was reminded by the investigator that under the terms of his parole agreement his person and property were subject to search. Prior to trial, Terry filed a motion to suppress the evidence seized during the search of his apartment. The district court denied the motion, holding that Terry had consented to searches by all law enforcement officers under the parole agreement and that the tip that Terry was manufacturing methamphetamine in his apartment provided reasonable suspicion for the search. Terry objected to the admission of the seized evidence at trial, preserving this claim for appellate review.

## Discussion

¶6 This Court reviews a trial court's decision denying a defendant's motion to suppress for an abuse of discretion. *Gomez v. State*, 2007 OK CR 33, ¶5, 168 P.3d 1139, 1141. We review the district court's legal conclusions *de novo*, and its factual findings for clear error, viewing the evidence in the light most favorable to the State. *Coffia v. State*, 2008 OK CR 24, ¶5, 191 P.3d 594, 596; *Gomez*, 2007 OK CR 33, ¶5, 168 P.3d at 1141–42 (citing *Seabolt v. State*, 2006 OK CR 50, ¶5, 152 P.3d 235, 237).

¶7 We resolve Terry's challenge to the admission of evidence seized from the padlocked closet inside his apartment and from the adjoining vacant apartment based on standing. To establish standing to contest the constitutionality of a search, a defendant must show he had a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *see also Anderson v. State*, 1999 OK CR 44, ¶18, 992 P.2d 409, 417. When officers asked Terry the combination to the padlock, he denied

any interest in the closet and claimed that the closet belonged to the building's maintenance man. Terry's statement provided proof that he had no legitimate expectation of privacy in the padlocked closet where officer's found evidence of methamphetamine manufacturing. *See Champeau v. State*, 1984 OK CR 54, ¶11, 678 P.2d 1192, 1195–1196 (burden is on defendant to prove a legitimate expectation of privacy in area searched). Nor did Terry have any legitimate expectation of privacy in the unoccupied adjoining apartment. At the time of the search, the apartment was vacant and there was no evidence Terry had any possessory interest in it. *See id.* at ¶11, 678 P.2d at 1196. ("Legitimation of expectations of privacy arise either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."). Because the evidence showed that Terry had no legitimate expectation of privacy in the vacant apartment and locked closet, his constitutional challenge to the admission of much of the evidence gathered in the complained-of search must fail.

¶8 Whether the search of Terry's apartment and the seizure of items in it violated the Fourth Amendment must be analyzed under substantive Fourth Amendment law. *See State v. Marcum*, 2014 OK CR 1, ¶7, 319 P.3d 681, 683. The United States Supreme Court has considered warrantless searches of a probationer or parolee in several cases. *See, e.g., Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006); *United States v. Knights*, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 875–76, 107 S.Ct. 3164, 3169–3170, 97 L.Ed.2d 709 (1987). In *Griffin*, one of the first cases considering the issue, probation officers searched a probationer's home without a warrant pursuant to an administrative regulation that allowed such searches where there was "reasonable grounds" to believe the probationer possessed contraband. *Griffin*, 483 U.S. at 870–71, 107 S.Ct. at 3167.

2. The door had a combination padlock hanging on a hasp, but the padlock was unlocked.

3. One of the reaction vessels was made from a distinctive Ocean Spray Cranberry jug, exactly like a bottle of juice found in Terry's apartment. Other reaction vessels were made from water bottles of the same type and brand found in Terry's apartment.

The Court upheld the search, reasoning that supervision of a probationer presents "'special needs' beyond normal law enforcement." *Id.* 483 U.S. at 873–74, 107 S.Ct. at 3168.

¶ 9 The Court expanded *Griffin* in *Knights.* In *Knights,* a law enforcement officer searched a probationer's home pursuant to the search condition of his probation coupled with reasonable suspicion that he was involved in criminal activity. *Knights,* 534 U.S. at 114, 122 S.Ct. at 589. The probationer's search condition required him to submit to searches "at any time, with or without a search warrant, warrant of arrest, or reasonable cause by any probation officer or law enforcement officer." *Id.* Knights argued that the warrantless search was improper under *Griffin* because it was for investigatory rather than supervisory purposes. *Id.* 534 U.S. at 116–17, 122 S.Ct. at 590. The Court upheld the search, but abandoned the "special needs" rationale utilized in *Griffin.* Instead, the Court applied a traditional reasonableness inquiry, balancing "the degree to which [the search] intrudes on the individual's privacy" with "the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* 534 U.S. at 118–19, 122 S.Ct. at 591. Regarding the individual's privacy interest, the Court noted that "[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (internal quotation omitted) Important to the Court was the fact that Knights had been "unambiguously informed" of the search condition, further diminishing his expectation of privacy. *Id.* 534 U.S. at 119–20, 122 S.Ct. at 592. As to the government's interest, the Court emphasized the State's dual interest in integrating probationers back into the community and combating recidivism, crediting the "assumption" that probationers by virtue of their status are more likely to violate the law. *Id.* 534 U.S. at 120–21, 122 S.Ct. at 592. The Court balanced these interests and held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* 534 U.S. at 121,

122 S.Ct. at 593. Because the search in *Knights* was supported by reasonable suspicion, the Court did not consider whether a suspicionless search by police would be reasonable.

¶ 10 In *Samson,* the Court answered the question left open by *Knights,* namely "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson,* 547 U.S. at 847, 126 S.Ct. at 2196. With no individualized suspicion, police searched a parolee who had agreed, as required by state law, "to be subject to search or seizure by a parole or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* 547 U.S. at 846–47, 126 S.Ct. at 2196. The Court upheld the search, finding the search reasonable after balancing the degree to which the search intruded upon the parolee's privacy and the degree to which the search was needed for the promotion of legitimate governmental interests. *Id.* 547 U.S. at 848, 126 S.Ct. at 2197. Parolees subject to terms and conditions of release "have severely diminished expectations of privacy by virtue of their status alone." *Id.* 547 U.S. at 852, 126 S.Ct. at 2199; *see also id.* 547 U.S. at 850, 126 S.Ct. at 2198 (observing that the privacy-expectations of parolees are even lower than those of probationers "because parole is more akin to imprisonment than probation is to imprisonment"). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* (*quoting Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972)).

¶ 11 Weighed against the "severely diminished" privacy expectation of parolees, the Court found the State's "overwhelming interest" in monitoring parolees was sufficient to justify the search. The Court specifically observed that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated

under the Fourth Amendment." *Samson,* 547 U.S. at 853, 126 S.Ct. at 2200.

¶ 12 Terry claims that, even though he was a parolee, he had an expectation of privacy in his home and that the warrantless, investigative search of his home violated the Fourth Amendment. He argues that the holding in *Samson* cannot be used to justify the search in this case because Oklahoma does not have a statute like California, requiring waiver of all Fourth Amendment rights as a condition of release on parole. Terry maintains the parole agreement he signed was not a blanket waiver of his right to privacy, but rather an agreement with the Pardon and Parole Board to allow himself to be searched by his parole officer for supervisory purposes. Terry all but concedes that a search pursuant to his signed parole agreement would be reasonable if the search condition allowed law enforcement, in addition to parole officers, to search him at any time or place. Terry insists that without express authorization allowing a search by all branches of law enforcement, the search condition he signed in return for being granted parole was limited to supervisory searches by parole officers only. We disagree.

¶ 13 Under Oklahoma law, the Governor is vested with the power to grant paroles, after conviction of any offense except cases of impeachment, with appropriate restrictions and conditions, subject to the regulations prescribed by law. 57 O.S.2011, § 332; Okla. Const. art. 6, § 10. The Oklahoma Pardon and Parole Board promulgates the rules and regulations for the supervision of parolees. See 57 O.S.2011, § 355. The Board has promulgated a number of standard conditions, applicable to every person granted parole. The standard search condition reads:

Parolee shall be subject to search, without a warrant, at any time or place. Searches may be made of the parolee's person, any vehicle in the parolee's possession or under the parolee's control, and other personal or real property in the parolee's possession or under the parolee's control, to the full extent allowed by the law.

*Pardon and Parole Board Policy and Procedures Manual,* 24 (*available at* http://www. ok.gov/ppb/documents/Policy% 20Manual.pdf).

¶ 14 The resolution of this claim rests on Terry's diminished expectation of privacy dictated by the terms of his own parole agreement. The record shows that, upon his release from prison, Terry signed Rules and Conditions of Parole, patterned after the standard condition though not verbatim, which stated: "I understand that at any time or place, I am subject to search. In addition, my vehicle and any property under my control is subject to search." This search condition did not limit searches of Terry to supervisory searches conducted by his parole officer. Unlike the other listed conditions and rules that expressly provided for the role and authority of the parole officer in Terry's parole agreement, the search condition unconditionally allowed searches without limitation concerning who may conduct the search, the purpose of the search (investigatory or supervisory), time, place, and the necessity of a search warrant or cause. Persons on supervised release who sign such provisions in exchange for freedom manifest an awareness that with release comes the possibility of intrusions into their homes. It is evident that parolees enjoy a severely diminished expectation of privacy compared to ordinary citizens and that the State has a substantial interest in supervising parolees. While Terry enjoyed the benefit of parole, he was required to suffer the burdens he agreed to in his parole agreement, including being subject to search at any place or time. Because the search was in compliance with Terry's parole agreement, we find that the search was reasonable and that the district court did not err in denying his motion to suppress evidence.

### DECISION

¶ 15 The Judgment and Sentence of the district court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2014), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

LEWIS, P.J., and SMITH, V.P.J. concur.

LUMPKIN, J., specially concur.

LUMPKIN, Judge: specially concurring.

¶1 I concur in the Court's decision to affirm the Judgment and Sentence in this case but write separately to address the following.

¶2 First, I note that this Court interprets Article II, § 30 of the Oklahoma Constitution the same as the Supreme Court interprets the Fourth Amendment of the Federal Constitution. *State v. Sittingdown*, 2010 OK CR 22, ¶17, 240 P.3d 714, 718; *State v. McNeal*, 2000 OK CR 13, ¶10, 6 P.3d 1055, 1057. Both provisions contain almost the exact same wording, and in substance are identical. *McNeal*, 2000 OK CR 13, ¶10, 6 P.3d at 1057; *Long v. State*, 1985 OK CR 119, ¶6, 706 P.2d 915, 917. The touchstone of these constitutional provisions is reasonableness. *See Randolph v. State*, 2010 OK CR 2, ¶19, 231 P.3d 672, 679.

¶3 Second, both *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), and the present case involve parolees. [P]arolees are on the "continuum" of state-imposed punishments. *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001) (internal quotation marks omitted). On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, "parole is an established variation on imprisonment of convicted criminals.... The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972). "In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements." *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365, 118 S.Ct. 2014, 2021, 141 L.Ed.2d 344 (1998). *See also United States v. Reyes*, 283 F.3d 446, 461 (C.A.2 2002) ("[F]ederal supervised release, ... in contrast to probation, is meted out in addition to, not in lieu of, incarceration" (internal quotation marks omitted)); *United States v. Cardona*, 903 F.2d 60, 63 (C.A.1 1990) ("[O]n the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers" (citations and internal quotation marks omitted)).

*Id.*, 547 U.S. at 850, 126 S.Ct. at 2198 (citations corrected). Thus, the United States Supreme Court determined that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee subject to a valid search condition of his parole. *Id.*, 547 U.S. at 856, 126 S.Ct. at 2202. In reaching this determination, the Supreme Court left intact its holding in *Knights* that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.*, 547 U.S. at 849, 126 S.Ct. at 2198, *quoting Knights*, 534 U.S. at 121, 122 S.Ct. at 593. Law enforcement officers must keep these two differing circumstances in mind.