STATE v. STARK



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE v. STARK

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE v. STARK
2018 OK CR 16
Case Number: S-2017-66
Decided: 05/24/2018
STATE OF OKLAHOMA, Appellant v. LOUIS KILAKILA STARK, Appellee.
Cite as: 2018 OK CR 16, __ __

 

 

OPINION

ROWLAND, JUDGE:

¶1 The State of Oklahoma charged Appellee Louis Kilakila Stark in the District Court of Comanche County, Case Number CF-2015-530, with Unlawful Possession of a Controlled Drug (Marijuana) With Intent to Distribute (Count 1) in violation of 63 O.S.Supp.2012, § 2-401, Unlawful Possession of a Controlled Dangerous Substance (Cocaine) (Count 2) in violation of 63 O.S.Supp.2012, 2-402, Unlawful Possession of Drug Paraphernalia (Count 3) in violation of 63 O.S.2011, 2-405, and Felon in Possession of a Firearm (Count 4) in violation of 21 O.S.Supp.2014, § 1283(A). The State filed a Supplemental Information alleging one prior felony conviction for sentence enhancement on Counts 1, 2, and 4. Stark filed a motion to quash the Information and Bind Over Order and to suppress the narcotics and firearms evidence, alleging the search yielding the contraband was illegal. The Honorable Gerald Neuwirth sustained on the record Stark's motion to quash and suppress on January 11, 2017, and again by written order dated January 18, 2017. The court found that the warrantless entry into the trailer house under the guise of a protective sweep was a subterfuge and amounted to an illegal search that tainted the later consent search and search conducted pursuant to a search warrant. The State of Oklahoma filed the instant appeal of the district court's order.

¶2 Once the cause was submitted for decision, this Court determined supplementation of the record was necessary to resolve the issues presented. We remanded the case to the district court for an evidentiary hearing to determine whether the police officers had permission from any lawful occupant to enter the trailer house before officers conducted a protective sweep and whether Stark's presence in the trailer house was with the permission of the home's lessee resident. The district court filed its Findings of Fact and Conclusions of Law after the evidentiary hearing, finding that Stark had permission to be in the trailer house from the lawful lessee resident and that no lawful occupant gave the officers permission to enter before they conducted the protective sweep of the trailer.

¶3 The State of Oklahoma raises four issues:

(1) The district court's order granting Appellee's Motion to Quash the Information, Quash the Arrest and to Suppress Evidence should be reversed because Appellee has not established that he has standing to challenge any search of the residence;

(2) The district court erred in its ruling that Officer Witten conducted an illegal search of the residence when it was in fact a protective sweep of the residence for the purpose of officer safety;

(3) The district court erred in its ruling that Officer Witten did not obtain proper consent from the homeowner before conducting any type of search of the residence; and

(4) The district court erred in its ruling that the actions of the officers rose to the level of misconduct requiring suppression of the evidence.

¶4 We reverse the district court's order and remand this matter to the district court for further proceedings for the reasons discussed below.

BACKGROUND

¶5 Siya Menefee called the Lawton Police Department, on October 5, 2015, requesting assistance in retrieving her belongings from inside a trailer house where she had been living. She reported to the dispatcher and to the patrol officers who responded to her call that the men inside, out-of-town visitors of her roommate, had marijuana, cocaine, and guns. She further stated that the men would not let her inside her residence and that she feared for her safety while attempting to retrieve her belongings. Officers knocked on the door with guns drawn in a ready position, removed the men, including Stark, and then made entry for the stated purpose of a "protective sweep" based on Ms. Menefee's report of the presence of weapons in the home. The officers secured two firearms in plain view and cleared the home of occupants, with the exception of one man with mobility issues who was seated just inside the front door of the trailer house. The odor of raw marijuana was noticeable. The police informed the lessee resident, whom they had summoned home, of the presence of firearms and the odor of marijuana in her trailer. She consented to a search of her trailer house. Patrol officers found a large amount of marijuana in a backpack in the lessee resident's bedroom and notified special operations. The special operations detectives obtained a search warrant and seized the drugs and guns.

DISCUSSION

¶6 The State challenges the district court's order granting Stark's motion to quash and suppress. We exercise jurisdiction under 22 O.S.2011, § 1053(5)[1] because the State's ability to prosecute Stark on the felony charges is substantially impaired absent the suppressed evidence, making review appropriate. See State v. Strawn, 2018 OK CR 2, ¶ 18, ___P.3d___.

¶7 The State's argument challenging Stark's standing to contest the search requires only brief consideration. The record before us amply supports the district court's finding that Stark was an overnight guest of the lawful lessee resident and therefore had standing to challenge the search in this case. See Minnesota v. Olson, 495 U.S. 91, 96-100, 110 S.Ct. 1684, 1688-90, 109 L.Ed.2d 85 (1990) (holding overnight guest has a legitimate expectation of privacy in host's home and standing to challenge a search thereof). Hence, we find the district court did not err by rejecting the State's standing challenge. See Terry v. State, 2014 OK CR 14, ¶ 7, 334 P.3d 953, 955 ("To establish standing to contest the constitutionality of a search, a defendant must show he had a 'legitimate expectation of privacy in the invaded place.'") (citation omitted). The State's standing claim is without merit.

¶8 Whether the search of the trailer and the seizure of items in it violated Stark's constitutional rights is an issue that must be analyzed under substantive Fourth Amendment law. See State v. Marcum, 2014 OK CR 1, ¶ 7, 319 P.3d 681, 683. In reviewing a district court's ruling on a motion to suppress evidence based upon an allegation the search or seizure was illegal, we credit the district court's findings of fact unless they are unsupported by the record and are clearly erroneous, and we review the legal conclusions based on those facts de novo. Strawn, 2018 OK CR 2, at ¶ 19. Review of this record leads us to conclude that the district court erred in sustaining Stark's motion to suppress evidence based on its flawed assessment of probable cause, exigent circumstances, and the independent source doctrine.

¶9 The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting United States v. United States District Court for the Eastern District of Michigan, Southerndivision, et al., 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). Warrantless searches and seizures inside a home are "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). This presumption can be overcome by a showing of one of the few "specifically established and well-delineated exceptions" to the warrant requirement, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), such as "'hot pursuit of a fleeing felon, or imminent destruction of evidence, ... or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.'" Olson, 495 U.S. at 100, 110 S.Ct. at 1690 (citations omitted) . Even where officers make an unlawful entry to secure a residence, any resultant search warrant based upon information not gained by the illegal entry will be upheld.

On this issue, we hold that the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

Segura v. United States, 468 U.S. 796, 799, 104 S.Ct. 3380, 3382, 82 L.Ed.2d 599 (1984).

¶10 The instant case is remarkably similar to the United States Supreme Court's decision in Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). In McArthur, police officers were called out to a trailer house to stand by while a female retrieved her belongings from inside where she had been staying. Id., 531 U.S. at 328-29, 121 S.Ct. at 948-49. As she exited the residence she told officers they should search the trailer because the man inside, her husband, had "dope" inside there. Id. Officers knocked on the door, asked the man for permission to search and upon being denied, kept him detained outside the trailer until a search warrant was obtained. Id. The Supreme Court found the officers' actions reasonable because they had probable cause to search based upon the eyewitness account of the wife, and an exigent circumstance requiring them to secure the residence while a warrant was obtained because their request to search had alerted the man that police knew of his unlawful activity. Id., 531 U.S. at 337, 121 S.Ct. at 953.

¶11 These facts, legally speaking, are strikingly similar to the facts in the case before us now. At the point in time that the officers knocked on the door of this trailer, they had already obtained from Ms. Meneffee almost exactly the same information officers had in McArthur, and which the Supreme Court found sufficient to support the detention of the occupant outside the residence and the issuance of a search warrant. Specifically, officers had probable cause to believe that the trailer house contained evidence of a crime based on Ms. Menefee's statements. The police had the opportunity to speak with her and make at least a rough assessment of her reliability. The details she provided about the types of guns and drugs inside the trailer house indicated a firsthand knowledge of their presence. The officers had reason to believe that the occupants knew Ms. Menefee was aware of the guns and drugs inside the trailer house and that she was angry enough to call police about being denied admission to retrieve her belongings. The officers had reason to believe the trailer house occupants were aware of their presence, and fearing an imminent entry for Menefee's belongings or a search, would destroy evidence or otherwise pose a threat to the officers or other persons who might interfere with their criminal activity. Armed with this information, the officers took action to confirm the existence of criminal activity by knocking on the door and seizing Stark and the other occupants. The immediate detection of the odor of raw marijuana and observation of guns in plain sight from the doorway instantly confirmed Ms. Menefee's reported accusations. This was a rapidly evolving incident under circumstances giving rise to a reasonable concern about the nature of the danger involved. Understandably the officers conducted a protective sweep for their safety. In an effort to reconcile their law enforcement needs and the demands of personal privacy, the officers obtained consent from the trailer home lessee to search and later obtained a search warrant after finding a large amount of marijuana in a backpack. Based on the reasoning in McArthur, we find the seizure of Stark, the warrantless entry for the protective sweep, and the subsequent searches of the trailer were reasonable.

¶12 Even assuming, however, for argument's sake that the initial protective sweep was unauthorized and that no valid consent to search was given by the lessee, the search warrant ultimately obtained by officers was sufficiently supported by probable cause not derived from any illegal source to support the search. As noted above, Ms. Menefee's statements provided probable cause to believe criminal activity was afoot inside the trailer. "Evidence may be admissible where it was discovered through an independent source, or where intervening circumstances break the connection between the illegal government conduct and discovery of the evidence." Jacobs v. State, 2006 OK CR 4, ¶ 6, 128 P.3d 1085, 1087. Hence, the search warrant affidavit, extirpating any information gained after the officers contacted the occupants at the front door, still supported the issuance of the warrant and the resultant search. "The law is clear that the inclusion of illegally obtained evidence does not vitiate a search warrant otherwise lawfully issued upon probable cause." Simon v. State, 1973 OK CR 429, ¶ 15, 515 P.2d 1161, 1164.

¶13 Deciding the present case upon this narrow ground of extirpating the challenged information from the affidavit and then reviewing for probable cause serves two public policy aims. First, showing preference to searches based upon warrants encourages officers to obtain them rather than relying upon warrantless search exceptions. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). 

¶14 Second, it avoids application of the exclusionary rule where its deterrent effects are minimal or non-existent. During the evidentiary hearing held by the district court, one of the responding officers testified that Ms. Menefee "wanted us to go with her to get her stuff. She said she did not want to go in without officers being there because she was in fear of her safety." The officer admitted that Ms. Menefee never explicitly stated he could enter, although the context led him to believe she was giving consent for him to enter.

¶15 The officer's evaluation of his conversation with Ms. Menefee was the only reasonable interpretation under the circumstances to be made of her words and actions. She called police, complaining that armed men with drugs in her house would not let her inside to retrieve her belongings and that she needed officer assistance. If she had no intent to allow the officers inside the trailer, it strains the imagination to determine how exactly she expected the officers to obtain her belongings. Furthermore, it is well-settled that although silence or failure to object cannot manifest one's consent to search, consent can be inferred from one's conduct. See Lumpkin v. State, 1984 OK CR 71, ¶¶ 5 & 10, 683 P.2d 985, 986, 987 (holding consent given voluntarily where officer asked to look in defendant's trunk and defendant responded by retrieving trunk key from ignition and handing it to officer); United States v. Gordon, 173 F.3d 761, 766 (10th Cir. 1999)(holding handing over key to DEA agent evidenced defendant's voluntary consent to search locked duffle bag).

¶16 The actions of these officers in acting upon what they thought was consent from Ms. Menefee, one of the residents of the property, and then removing the occupants from the trailer house for officer safety while the officers obtained consent to search from the lessee and later a search warrant, even if negligent, are simply not the types of egregious conduct which should beget the significant societal costs of suppression.

Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates "substantial social costs," which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding" it, and "have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." We have rejected "[i]ndiscriminate application" of the rule, and have held it to be applicable only "where its remedial objectives are thought most efficaciously served," --that is, "where its deterrence benefits outweigh its 'substantial social costs.'"

Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L. Ed.2d 56 (2006) (internal citations and quotations omitted).

¶17 For these reasons, we find the initial entry by the officers was reasonable under the circumstances, but that even were this not so, the evidence was ultimately seized pursuant to a search warrant supported by probable cause obtained entirely independent of the contested entry. Accordingly, we hold the district court erred as a matter of law in suppressing the narcotics and firearms evidence against Stark in this case.

DECISION

¶18 The ruling of the district court sustaining Stark's Motion to Suppress is REVERSED and this case is REMANDED for further proceedings not inconsistent with this Opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2018), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF COMANCHE COUNTY
THE HONORABLE GERALD F. NEUWIRTH, DISTRICT JUDGE

APPEARANCES IN DISTRICT COURT AND ON APPEAL

 
 
 FRED C. SMITH
 EDDIE D. VALDEZ
 
 
 DISTRICT ATTORNEY
 ATTORNEY AT LAW
 
 
 KYLE A. CABELKA
 513 SW "C" AVENUE
 
 
 ASSISTANT DISTRICT ATTORNEY
 LAWTON, OK 73501
 
 
 315 SW 5TH STREET, ROOM 502
 COUNSEL FOR DEFENDANT/APPELLEE
 
 
 LAWTON, OK 73501
  
 
 
 COUNSEL FOR STATE/APPELLANT
  
 
 

 

OPINION BY: ROWLAND, J.
LUMPKIN, P.J.: Concur
LEWIS, V.P.J.: Dissent
HUDSON, J.: Concur
KUEHN, J.: Concur

FOOTNOTES

[1] Under Section 1053(5), the State may appeal "[u]pon a pretrial order, decision, or judgment suppressing or excluding evidence where appellate review of the issue would be in the best interests of justice[.]"

 

 

LEWIS, VICE PRESIDING JUDGE, DISSENTS:

¶1 The decision to suppress the evidence in this case was based wholly on the trial court's assessment of the facts. This Court reviews factual findings for an abuse of discretion and we will not disturb the factual findings of the trial court unless they have no support in the record. State v. Zungali, 2015 OK CR 8, ¶ 4, 348 P.3d 704, 705; State v. Kudron, 1991 OK CR 92, ¶ 19, 816 P.2d 567, 571. An abuse of discretion is a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. Bosse v. State, 2015 OK CR 14, ¶ 23, 360 P.3d 1203, 1216. "[T]he credibility of witnesses and the weight given their testimony is within the exclusive province of the trier of fact, who may believe or disbelieve the witnesses as it desires." Kudron, 1991 OK CR 92, ¶ 19, 816 P.2d at 570-71. In this case, there are sufficient facts to support the trial court's suppression of the evidence. I, therefore, must dissent.

¶2 The majority's conclusion that the facts in Illinois v. McArthur are "remarkably similar" is faulty. In McArthur, the officers detained the occupants and obtained a search warrant before any search commenced, not so here. Further, in McArthur there was a clear indication that the person giving incriminating information to the police was reliable. Not so here. There was no supposedly "protective sweep" in McArthur, but the majority relies on a protective sweep to justify the initial entry.

¶3 To justify a protective sweep, the searching officer must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger" to the officers at the scene. Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990). In this instance there was no evidence of danger to police or civilians, as the officers had ordered everyone out of the trailer. In fact, officers did not even check all of the rooms in the trailer.

¶4 Here, facts supporting the trial court's findings were that officers entered the residence without a warrant before they viewed firearms and smelled marijuana and they did not indicate a clear reason to conduct a protective sweep. Officers testified that they relied on Menefee's consent to enter the trailer, but a person's valid consent must be unequivocal, specific, and voluntary. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); United States v. Soto, 988 F.2d 1548, 1557-58 (10th Cir. 1993). Here, officers did not have clear consent from Menefee.

¶5 The presence or absence of consent is a question of fact and this Court will not reverse a trial court's finding absent an abuse of discretion. See Sands v. State, 1975 OK CR 192, ¶ 25, 542 P.2d 209, 214 (the legality of a search based on evidence of consent was a determination of fact for the trial court). See also Schneckloth v. Bustamonte, 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973). Moreover, voluntariness of the consent is determined from all of the facts and circumstances. See Van White v. State, 1999 OK CR 10, ¶ 45, 990 P.2d 253, 267.

¶6 I would find that the trial court did not abuse its discretion in finding that the initial entry violated the Fourth Amendment because officers did not have a warrant, nor did they articulate any exception to the warrant requirement authorizing their entry into the trailer. Further, as the evidence was acquired after the illegal entry, and the later consent of the homeowner and subsequent warrant was the fruit of that illegal entry, I would find that the trial court did not abuse its discretion in suppressing the evidence in this case.

 

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1991 OK CR 92, 816 P.2d 567, STATE v. KUDRON
Discussed at Length
 2006 OK CR 4, 128 P.3d 1085, JACOBS v. STATE
Discussed
 2014 OK CR 1, 319 P.3d 681, STATE v. MARCUM
Discussed
 2014 OK CR 14, 334 P.3d 953, STATE v. TERRY
Discussed
 2015 OK CR 8, 348 P.3d 704, STATE v. ZUNGALI
Discussed
 2015 OK CR 14, 360 P.3d 1203, BOSSE v. STATE
Discussed
 2018 OK CR 2, STATE v. STRAWN
Discussed
 1975 OK CR 192, 542 P.2d 209, SANDS v. STATE
Discussed
 1999 OK CR 10, 990 P.2d 253, 70 OBJ 870, Van White v. State
Discussed
 1984 OK CR 71, 683 P.2d 985, LUMPKIN v. STATE
Discussed
 1973 OK CR 429, 515 P.2d 1161, SIMON v. STATE
Discussed
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1053, State or Municipality May Appeal in What Cases
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-401, Prohibited Acts A - Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA